## In re JACOBSON & BERMAN.

(District Court, S. D. California, S. D. April 10, 1924.)

No. 5397.

**Bankruptcy ⊚⇒136(2)—Evidence held to sustain finding of referee that bankrupt concealed partnership assets.**

Testimony of a bankrupt partner, who within two months drew on checks from the partnership funds, without his partner's knowledge, more than $36,000, which was unaccounted for, that he lost the same in gambling on horse races, *held* not entitled to belief, and, being uncorroborated, a finding by the referee that he retained and concealed the greater part of such amount affirmed.

In Bankruptcy. In the matter of Jacobson & Berman, a partnership composed of Louis N. Jacobson and William Berman, bankrupts. On review of order of referee. Affirmed.

In this case the trustee asked for an order, directed to bankrupt Berman, requiring him to turn over to the trustee the sum of $38,019, which it was alleged he had fraudulently misappropriated from the firm's assets and was then fraudulently concealing. Upon the hearing had the following facts (as stated by the referee in his findings) were elicited:

The bankrupts each for a number of years before the formation of their partnership, which is now in bankruptcy, had been retail merchants doing business in and about Southern California, buying or starting business at several places, selling them out, and gradually accumulating some capital. In November, 1922, they became associated together as equal partners in a wholesale and retail automobile tire business. Between the time when this partnership was formed and the latter part of December, 1922, they became indebted to the Firestone Tire & Rubber Company to the extent of approximately $40,000, which indebtedness now remains unpaid. Said indebtedness was evidenced by trade acceptances, all of which became due after April 1, 1923.

On the 2d day of January, 1923, a fire occurred in their place of business, and as a result they collected from certain insurance companies the sum of $25,000 cash as an adjustment of their loss. In addition, there were left, as part of the stock of goods on hand after the fire, tires of the salvage value of in excess of $7,000. The fire insurance money was paid to these partners on or about the 26th day of January, 1923. William Berman had before that kept the books for the partnership and had exclusive management of the financial arrangements of the company. He alone signed the checks and kept the record of cash in the bank. After the receipt of the insurance money he continued in complete charge of the bank account and was the only one of the partners who signed checks.

As soon as the insurance money was deposited in the partnership bank account, Berman commenced drawing checks upon the account, cashing these checks, and appropriating the money to his own uses. This course of conduct on the part of William Berman commenced on the 26th day of January, 1923, and ended on the 29th day of March, 1923, and his system of operation was to tear bunches of checks out of the back of the current check book, all the checks in said current check book being serially numbered. The checks so torn from the back of the check book he carried about on his person, and filled out and cashed in rapid succession. He made no entry of his withdrawals upon the stubs of the check book. Some of these checks so used by Berman he cashed in Los Angeles and others in San Diego. During the period mentioned he drew and cashed 36 checks, totaling $36,674.

None of the money drawn by the above checks has been turned over to the trustee, and the only statement as to its disposition is by Berman that he lost all of this amount of money, save not to exceed $500, in gambling at

Tia Juana, Mexico. Berman states he gambled at Los Angeles, but says that all of his Los Angeles gambling losses do not exceed the sum of $500, and, with the exception of not more than $500 lost in gambling at Los Angeles, he says the balance was lost mainly on the race track at Tia Juana, Mexico. He made flying trips to San Diego as he says, and always registered either at the Grant Hotel or the Maryland Hotel at San Diego in his own name. Apparently, according to the record, he visited San Diego and Tia Juana on 13 different days during the time he states he was playing the races.

His explanation of his conduct in drawing checks in Los Angeles is that he wished to accumulate enough money to go down to Tia Juana to play the races, that he carried all or most of the money he received in cashing each series of checks in Los Angeles on his next succeeding trip to San Diego, and that the reason he cashed additional checks in San Diego, which he did on several occasions immediately after arriving in San Diego and before the races, was that he thought he might need additional money to play upon the races.

Although carefully examined to that end, Berman states that he is unable to state the amount of cash that he had in his pocket at any time when he went to San Diego, the amount that he lost on the races on any date, or on any trip, the maximum amount that he lost on any day except that he does not believe it was over $1,000, and the only detail which Berman has furnished in connection with these losses is that he does not believe he lost more than $100 on any race.

Asked upon his examination in bankruptcy upon what horses he had placed bets, he was unable to give the names of any horses, except one named Charley Boy; he did not remember how much he had bet on Charley Boy, only that he had lost on Charley Boy. After an adjournment of his examination during the noon hour, he came back and gave names of about a dozen other horses. He says that at the race track he started out with bets ranging from $40 to $60 on each race, and if he lost he sometimes increased his bets to $100 a race, but never any more than $100 on any race. There were from seven to eight races each day the races were in progress. Sometimes he lost bets, sometimes he won bets, and won on many races according to his testimony. He states that on some days at the races he did not quit a loser, but on other days he lost.

Berman presents no corroboration of his testimony with respect to the amount that he bet on the races, or with respect to his losses. On the contrary, the only man, one Cole, that Berman states he ever went to the races with, with the exception of Jacobson, testifies that he was with Berman one entire afternoon at the track; that Berman did not bet over $5 on any race, and generally not more than $2, and that Berman's total losses in the afternoon could not have exceeded $20. At the end of that day's racing the witness states that, on their journey back to San Diego together the bankrupt stated to him that he had lost $25 on the day's betting. Attempts were made by other witnesses to corroborate Berman's story of betting losses, but none of the witnesses brought forward by Berman were able to state whether or not Berman had lost any money on the few occasions that they saw him at the race track, and no one other than Cole ever saw him lose any money at Tia Juana.

The referee concludes as follows: "Placing the most favorable construction upon the credible evidence introduced in his behalf, the referee finds that William Berman did not gamble away or lose out of the sums which he obtained upon the checks as aforesaid more than the sum of $1,674, and that he has concealed and is concealing from his trustee in bankruptcy now the sum of $35,000 in cash."

In consequence of this the following order was entered by the referee: "It is hereby ordered that William Berman, one of the above-named bankrupts, pay over to William H. Moore, Jr., trustee in bankruptcy herein, within ten (10) days from the date of service of this order upon him, the sum of $35,000 belonging to this estate in bankruptcy, and found to be in the possession of William Berman and under his control, and by him concealed from the trustee."

From the order the bankrupt has appealed to this court.

W. T. Craig, of Los Angeles, Cal., for trustee and creditors.

E. F. Gerecht, C. W. Hall, and Turnbull, Heffron & Kelley, all of Los Angeles, Cal., for bankrupt Berman.

Force Parker, of Los Angeles, Cal., referee in bankruptcy.

BLEDSOE, District Judge (after stating facts as above). In this case the order of the referee appealed from is affirmed. The record supports his findings in their entirety.

In my almost 25 years' experience upon the bench, I do not now recall any transaction coming to my attention as astounding in character as this; and if anything were needed to contribute to the enormity of the offense against honesty and decency for which the bankrupt Berman stands admittedly responsible, it would be for the court to lend apparent approval to his conduct by now declining to hold him obligated to the repayment of the large sums of money he deliberately filched from his partner directly and from his creditors indirectly.

His admission that, without authority, in a secretive manner, and without the knowledge of his partner, he appropriated sums approximating $40,000 of the partnership funds, wherewith to go to Tia Juana, Mexico, and other places, and play and lose the same upon the races and other forms of gambling, is sufficient in itself to destroy any vestige of integrity that might ordinarily attach to his statements, and justify the court in declining to believe any part of his extraordinary tale. An honest man would not do the things that he did. His admission that he did do them is an admission that he is dishonest. Being dishonest, his testimony may not be relied upon or accepted. In addition to that, the testimony of his partner and other witnesses in no wise serves, in my judgment, to corroborate his lurid tale. I am confident that the referee was entirely right in declining to be bound by it merely because it was proffered under oath.

The order is that he pay over to the trustee the sum of money which the referee finds he appropriated and still has. What shall be done if he shall decline to make the payment is a matter that need not be determined at this time.